# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JOSEPH TERRY,

                Plaintiff

    v.

CO JAMES HULSE JR., et al.,

                Defendants.

No. 16-CV-252 (KMK)(LMS)

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO REOPEN DISCOVERY

**KOBRE & KIM LLP**

Lindsey Weiss Harris
Darryl G. Stein
800 Third Avenue
New York, New York 10022
Tel.: (212) 488-1243
Darryl.Stein@kobrekim.com

Dated:      December 20, 2019

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ...................................................................................................................... 2

I.    Factual Background ................................................................................................ 2

II.   Procedural History ................................................................................................. 3

ARGUMENT ......................................................................................................................... 6

I.    Terry had been diligent in pursuing discovery, but his *pro se* status inherently limited his efforts. ................................................................................................................ 7

II.   As a *pro se* litigant, Terry did not foresee the need for this discovery about administrative exhaustion. ...................................................................................................... 8

III.  Terry seeks narrowly tailored discovery that is highly relevant to the administrative exhaustion issue. .................................................................................................... 9

        a.    Terry seeks evidence to corroborate his expected testimony that he repeatedly attempted to file grievances. ..................................................................... 10

        b.    Terry seeks evidence to challenge Defendants' general evidence about the availability and accessibility of the grievance system. ......................................... 16

IV.   Trial is not imminent............................................................................................. 20

V.    Defendants will suffer no prejudice apart from the ordinary burdens of discovery against a represented litigant. .......................................................................................... 21

VI.   The relevance of discovery, the minimal prejudice to Defendants, and Terry's previous diligence outweigh Defendants' opposition to modifying the schedule for narrowly tailored discovery on a fixed schedule. ................................................................. 21

CONCLUSION.................................................................................................................... 22

# TABLE OF AUTHORITIES

**<u>CASES</u>**                                                                                       **<u>Page(s)</u>**

*Andrews v. Cruz,*
    04-CV-0566, 2006 WL 1984650 (S.D.N.Y. July 14, 2006)......................................14, 18

*Anselmo v. Annucci,*
    176 A.D.3d 1283 (N.Y. Sup. Ct., App. Div., 3d Dep't 2019) ...........................................16

*Colon v. N.Y. State Dep't of Corrs. & Cmty. Supervision,*
    15-CV-7432, 2019 WL 5294935 (S.D.N.Y. Oct. 17, 2019) .............................................18

*Hernandez v. Goord,*
    02-CV-1704, 2006 WL 2109432 (S.D.N.Y. July 28, 2006).............................................19

*Jacobs v. N.Y.C. Dep't of Educ.,*
    11-CV-5058, 2015 WL 7568642 (E.D.N.Y. Nov. 24, 2015) .............................................7

*Krawec v. Kiewit Constructors Inc.,*
    11-CV-0123, 2013 WL 1104414 (S.D.N.Y. Mar. 1, 2013)................................................7

*Lawrence v. Goord,*
    238 F.3d 182 (2d Cir. 2001), *vacated and remanded* 122 S. Ct. 1200 (2002) .................18

*Nelson v. Gleason,*
    14-CV-870A, 2018 WL 1569381 (W.D.N.Y. Mar. 29, 2018) ...........................................7

*Roland v. Hill,*
    17-CV-6524, 2019 WL 1128842 (W.D.N.Y. Mar. 12, 2019) ....................................16, 18

*Ross v. Blake,*
    136 S. Ct. 1850 (2016)......................................................................................................6

*Shapard v. Attea,*
    08-CV-6146, 2015 WL 866892 (W.D.N.Y. Mar. 2, 2015) ..............................................21

*Williams v. Fischer,*
    13-CV-118, 2015 WL 3522431 (W.D.N.Y. June 4, 2015)................................................7

*Williams v. Priatno,*
    829 F.3d 118 (2d Cir. 2016).......................................................................................6, 17

*Young v. Southwest Airlines Co.,*
    14-CV-1940, 2016 WL 3257008 (E.D.N.Y. May 4, 2016)...............................................8

**<u>Statutes & Rules</u>**

Fed. R. Civ. P. 16(b)(4)..........................................................................................................7

Civil Local Rule 33.2 ..............................................................................1, 9, 13, 15, 17, 21

Plaintiff Joseph Terry, through his limited scope *pro bono* counsel, submits this memorandum of law in support of his motion to reopen discovery.  This Court granted permission for Plaintiff to file this motion in the scheduling order entered after the status conference Terry requested by letter motion.  *See* Dkt. Nos. 136, 141.

## PRELIMINARY STATEMENT

Since Terry's documents were destroyed during his moves between correctional facilities, Defendants and the New York Department of Corrections and Community Supervision now have control of almost all  evidence concerning Terry's exhaustion of his administrative remedies.  But despite his diligent efforts to pursue discovery earlier in the case, Terry's *pro se* status limited both the discovery tools available to him and his foresight as to what types of evidence would help establish his exhaustion of administrative remedies.  In order to obtain this evidence—much of which likely should have been provided by Defendants in the first instance under their Local Civil Rule 33.2 discovery obligations—Terry now moves by his limited scope *pro bono* counsel to reopen discovery for 90 days.   Specifically, Terry seeks to serve the proposed requests for production and interrogatories annexed to the Stein Declaration and to take four depositions. Given that no trial or administrative exhaustion hearing dates have been set, and given the narrowly tailored, expedited discovery sought by Terry, Defendants will not be prejudiced, and the motion should be granted.

To place Terry's request in context, this brief explains the relevance of each document request, interrogatory, and deposition to the two arguments that he plans to present through his limited scope *pro bono* counsel upon resumption of the administrative exhaustion hearing that commenced on March 11, 2019  First, Terry seeks evidence to corroborate his testimony that he handed grievances to officers in the Special Housing Unit at Sullivan Correctional Facility. Second, he seeks evidence to challenge Defendants' assertions that a functioning grievance

procedure was available to him at that time.  Because the Court adjourned the March hearing before

Terry testified or called witnesses, the hearing remains open and the question of which witnesses

Terry may call to testify is not one of discovery but rather of the conduct of that unfinished hearing.

Nonetheless, in the interest of efficiently resolving the open questions raised at the November 19,

2019 status conference, and to allow the Court to evaluate these issues on a global basis, this brief

also addresses the relevance of the witnesses that Terry currently plans to call.

## BACKGROUND

### I.   Factual Background

Terry alleges that he was assaulted by corrections officers ("COs") at Sullivan Correctional

Facility on January 13, 2013, after which he was placed in the Special Housing Unit ("SHU") and

retaliated against for his efforts to hold his assailants accountable.  S*ee* Dkt. No. 2 ("Compl.") ¶

17, 20-46.  Terry alleges that he tried repeatedly to file grievances about the January 13 incident,

but the New York Department of Corrections and Community Supervision ("DOCCS") employees

in the SHU prevented these grievances from being filed and retaliated against him for his attempts.

*See* Compl. ¶ 17.  Among these attempts, Terry tried to file grievances immediately after he arrived

in the SHU (on or about January 13 or 14, 2013), on January 16, 2013, and again on February 6,

2013.  *See, e.g.*, Compl. ¶¶ 17, 42.

These grievances were apparently never filed, Dkt. No. 109 ("Defs. Prehearing Brief") at

1, and Terry alleges that he abstained from submitting further grievances for periods of time

"because [he] was in fear of being starved, attacked, and killed."  S*ee* Compl. ¶ 17.  This is why

Terry also "wrote numerous letters to outside agencies describing the assault by officers and

continu[ing] ongoing retaliation."  S*ee* Compl. ¶ 17.  Terry sent these letters to anyone he thought

may be able to help him, including the Superintendent of the Sullivan facility, the Commissioner

of Corrections, the Inspector General of DOCCS, the New York State Troopers, the Department

of Justice, Senator Kirsten Gillibrand, and the Federal Bureau of Investigation.  S*ee, e.g.*, Compl. ¶¶ 42, 45.  In fact, Terry wrote *repeatedly* to the Inspector General and the Superintendent.  S*ee* Compl. ¶¶ 42, 45.  These efforts apparently caused DOCCS to take action in 2013:  the Office of Special Investigations commenced an investigation just *three days* after the January 13 incident, and a Sex Crimes Unit investigation was opened and apparently closed within that year without Terry ever being informed.  *See* Stein Decl. ¶¶ 5, 6(a).  Yet DOCCS curiously has no record of any grievances filed by Terry, except for the one filed after Terry spent a year being shuffled between different facilities and in which he complained of his unanswered grievances from January and February 2013, and which was rejected as untimely.  *See* Compl. ¶ 17; Defs. Prehearing Brief at 1.

## II.    Procedural History

Terry commenced the instant action *pro se* by filing his complaint on January 12, 2016. After addressing service and various other matters, the Court entered a schedule whereby discovery would conclude on March 31, 2017, Dkt. No. 37, although an extension was granted to June 30, 2017, Dkt. No. 46.  Through the course of discovery, Magistrate Judge Smith held several discovery conferences in 2017 to address Defendants' demands for documents, interrogatory responses, and a deposition of Terry, and to address Terry's demands for the Office of Special Investigations report, the disciplinary records of the named Defendants, and the records from his trial (and resulting acquittal) on charges of assault in New York State's Sullivan County Court relating to the January 13 incident.[1]

---

[1] These 2017 status conferences were held on February 16 (Tr. at Dkt. No. 143), March 30 (Tr. at Dkt. No. 151), May 22 (Tr. at Dkt. No. 145), June 21 (Tr. at Dkt. No. 147), and July 27 (Tr. at Dkt. No. 149), and the transcripts are cited herein by date.

After an *in camera* review of the unredacted Office of Special Investigations report, Magistrate Judge Smith allowed Terry to review a redacted version and take notes, with the understanding that he would sign a form confirming that he was given access to the report and that he would be allowed a second opportunity to review the documents if the time allowed was insufficient. May 22, 2017 Tr. at 7:9-16. When Terry was provided the report, he received no more than three partially redacted pages. Stein Decl. ¶ 6(b). Later, Defendants' counsel also disclosed that "there is a video" of Terry from the time around the incident in the Office of Special Investigations file, which was provided to his counselor for Terry to view. July 27, 2017 Tr. at 3:11; Stein Decl. ¶ 6(c). Counsel has yet to receive a copy of this video.

As to Terry's request for disciplinary records, the Court likewise reviewed certain documents *in camera* and stated that there were "no disciplinary records that are required to be produced" for the named Defendants. March 30, 2017 Tr. at 2:19-23.[2]

Terry also sought records from his criminal trial (and resulting acquittal) in New York State's Sullivan County Court, in which he was charged in connection with the January 13 incident. In the status conferences, Terry focused primarily on obtaining transcripts from his trial, and the Court granted him leave to file a motion to compel Defendants' production of those records. July 27, 2017 Tr. at 4:12. But Terry accepted the Court's explanation that the Defendants lacked possession of those transcripts, which had never been ordered from the court reporter, and he chose

---

[2] Although beyond the scope of this motion to reopen discovery for the limited purpose of the administrative exhaustion hearing, Terry has repeatedly raised his concerns that no documents were produced about the disciplinary records of the Defendants, particularly in light of recent news coverage and lawsuits accusing one Defendant of similar conduct. *See, e.g.*, Dkt. No. 135 (March 11, 2019 Tr. at 59:11-20 (discussing *Avila v. Tucker*, 14-cv-08636 (NSR), 2016 WL 4619120 (S.D.N.Y. Aug. 31, 2016))); *see also Ramsay-Nobles v. Keyser*, 1:16-cv-05778 (S.D.N.Y.); *Johnson v. Tucker*, 7:17-cv-02739 (S.D.N.Y.). Given these cases, the files provided for *in camera* review may not have been complete.

not to file that motion.  Stein Decl. ¶ 6(d).[3]  Apart from the trial transcripts, Defendants' counsel

also represented that they had received other records from the Sullivan County Court case, but

neither Terry nor  counsel has yet to receive any such documents despite Defendants' counsel's

statement that they would be disclosed after he had them "scanned and copied."  March 30, 2017

Tr. at 12:8-14; Stein Decl. ¶ 6(e).

After completion of discovery, this Court denied Defendants' summary judgment motion

as to all of Terry's claims other than his First Amendment retaliation claim.  Dkt. No. 101.  The

Court then scheduled an evidentiary hearing on the issue of administrative exhaustion, which was

preceded by prehearing briefs submitted by Defendants' counsel and Terry *pro se*.  Dkt. Nos. 103,

109, 114, 116.  When the hearing took place on March 11, 2019 (Tr. at Dkt. No. 135), Defendants

presented two witnesses:  DOCCS Captain Paul Mace and DOCCS CO Joseph Franke.  March 11,

2019 Tr. at 3:1-23:9.  Without the benefit of counsel, Mr. Terry cross-examined these witnesses

*pro se*.  After Defendants called their only two witnesses, Terry asked to call his own witnesses,

after which he planned to testify.  *See* March 11, 2019 Tr. at 45:19.  The Court ordered Defendants'

counsel to provide information as to the whereabouts of these witnesses and adjourned the hearing.

*See* March 11, 2019 Tr. at 46:6-65:6.  Defendants' counsel subsequently filed a letter with some

information about these witnesses but "reserve[d] objection to Plaintiff's proposed witnesses as

irrelevant, burdensome, and duplicative."  Dkt. No. 128.

On April 2, 2019, the Court granted Terry's request for the appointment of limited scope

*pro bono* counsel for the purpose of assisting him in the evidentiary hearing on the issue of his

---

[3] Terry also raised his need for the trial transcripts in his July 10, 2017 letter to the Court, which
also explained that he had yet to receive color photos of the injuries he had sustained during the
January 2013 incident.  Dkt. No. 60.  Defendants later explained regarding the photographs that
those "original documents no longer exist."  July 27, 2017 Tr. at 3:3-4.

exhaustion of administrative remedies.  Dkt. No. 123.  Terry had written to lawyers in hopes of finding private counsel, and he had asked the Court to appoint *pro bono* counsel several times before:  for the first time on October 21, 2016, shortly after the Court set the discovery schedule, and he renewed this request annually, on October 16, 2017 and once again on October 22, 2018. *See* Dkt. Nos. 38, 65, 102.  Each of the requests had been denied without prejudice.  *See* Dkt. Nos. 39, 83, 104.  After the Court granted Terry's request, the undersigned became his limited scope *pro bono* counsel and entered appearances on July 12 and August 30, 2019.  Dkt. Nos. 133, 134. Counsel immediately began working with Defendants' counsel to obtain the discovery previously provided to Terry—which had been lost or destroyed by DOCCS when Terry was moved between correctional facilities—as well as other information relevant to the administrative exhaustion issue. When these discussions reached an impasse, the undersigned counsel filed a letter motion for a status conference to address how to obtain this information.  Dkt. No. 136.  At the resulting November 19, 2019 status conference, the Court granted Terry permission to move to reopen discovery by no later than December 20, 2019.  Dkt. No. 141.

## ARGUMENT

Terry seeks to reopen discovery about two factual issues that will help prove his exhaustion of available administrative remedies.  First, Terry seeks evidence to corroborate his testimony that he handed grievances to officers in the SHU at Sullivan Correctional Facility.  Second, he seeks evidence to challenge Defendants' assertions that a functioning grievance procedure was available to him while he was in the SHU.  This evidence will establish that the administrative remedies contemplated by the Prison Litigation Reform Act—which Defendants contend were available to Terry—were not in fact available.  *See Williams v. Priatno*, 829 F.3d 118, 123-24 (2d Cir. 2016) (analyzing *Ross v. Blake*, 136 S. Ct. 1850, 2016 WL 3128839 (2016)).

Under Federal Rule of Civil Procedure 16(b)(4), a case "schedule may be modified only for good cause and with the judge's consent," which is left to the Court's discretion. *See, e.g.*, *Krawec v. Kiewit Constructors Inc.*, 11-CV-0123, 2013 WL 1104414, at *8 (S.D.N.Y. Mar. 1, 2013) (citing *Grochowski v. Phoenix Construction*, 318 F.3d 80, 86, 2003 WL 115712 (2d Cir. 2003) for the proposition that the "decision to reopen discovery is within a district court's discretion"). The six factors generally used to determine good cause under Rule 16 weigh in favor of modifying the schedule to reopen discovery, namely:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*E.g.*, *Jacobs v. N.Y.C. Dep't of Educ.*, 11-CV-5058, 2015 WL 7568642, at *4 (E.D.N.Y. Nov. 24, 2015); *see also Williams v. Fischer*, 13-CV-118, 2015 WL 3522431, at *3 (W.D.N.Y. June 4, 2015) (reopening discovery after *pro se* litigant obtained counsel). Apart from Defendants' opposition to this motion, these factors weigh in favor of reopening discovery.

## I.   Terry had been diligent in pursuing discovery, but his *pro se* status inherently limited his efforts.

Terry diligently pursued discovery earlier in this case, but his *pro se* status inherently limited his access. As one court explained about another *pro se* litigant, "Even if defendants produced volumes of paper production to him (and he retained it while in custody), other methods of discovery (namely depositions beyond his own and that of the named defendants) had to await appointment or the appearance of counsel." *Nelson v. Gleason*, 14-CV-870A, 2018 WL 1569381, at *3 (W.D.N.Y. Mar. 29, 2018). Such was the case here, where Terry pressed Defendants' counsel for materials he thought were relevant to proving his case at status conferences before the Magistrate Judge and by correspondence with the Court. This included obtaining permission to

file a motion to compel, although he ultimately chose not to file given the Court's guidance that Defendants did not have the trial transcripts from his acquittal in Sullivan County Court.

Although Terry was not represented by counsel during discovery, his repeated efforts to seek representation by applying for *pro bono* counsel and contacting lawyers by letter weigh further in favor of his diligence. *See Young v. Southwest Airlines Co.*, 14-CV-1940, 2016 WL 3257008, at *3 (E.D.N.Y. May 4, 2016) (finding that a *pro se* litigant's diligent but unsuccessful effort to obtain counsel weighs in favor of diligence).

## II. As a *pro se* litigant, Terry did not foresee the need for this discovery about administrative exhaustion.

The question before the Court in the upcoming evidentiary hearing is a fairly technical one: whether Terry exhausted available administrative remedies under the Prison Litigation Reform Act. Without the benefit of counsel to analyze this issue and consider what factual evidence could be adduced to support his position, Terry understandably focused on his own experience, which he planned to offer through his testimony and the testimony of other individuals in and around the SHU during January and February 2013. While the need for the discovery discussed below may have been foreseeable to experienced counsel, the very fact that it addresses the somewhat arcane administrative exhaustion issue means that a *pro se* litigant may not have realized what evidence was available nor its importance. Understandably, a *pro se* litigant alleging wrongdoing by named Defendants can become focused on proving the substantive misconduct, rather than on obtaining evidence to corroborate his own intended testimony about exhaustion.

As a result, Terry's diligent discovery efforts focused on the matters that he thought were relevant to establishing the Defendants' liability for his mistreatment, rather than how to prove his exhaustion of administrative remedies. For instance, he wrote to the Court seeking permission to move to compel production of color photographs of his injuries, as well as records from the trial

in Sullivan County Court where he was acquitted of criminal charges arising from the same January 13 incident that forms the basis of the instant action.  Dkt. No. 61.  But there does not appear to be any indication that he foresaw the need for discovery on administrative exhaustion or brought the topic to the Court's attention.  Without Terry's focus on this issue, it is thus possible that even previous *in camera* reviews may have overlooked information relevant to exhaustion that may have been identified had he or his counsel been able to review the materials.

### III.   Terry seeks narrowly tailored discovery that is highly relevant to the administrative exhaustion issue.

Were the Court to reopen discovery, Terry would serve only the proposed requests for production and interrogatories and take only four depositions.  *See* Stein Decl. Exs. 1 ("Document Requests") & 2 ("Interrogatories").  Terry seeks documents showing his myriad efforts in 2013 to hold Defendants accountable for his mistreatment, as well as video recordings that may corroborate his testimony and the testimony of the witnesses he intends to call.  Likewise, Terry seeks documents concerning the supposed availability of the grievance process in the SHU, where the significant restrictions placed on inmates make the already opaque grievance system even more difficult to pursue.  The requested discovery will not only yield evidence relevant to Terry's administrative exhaustion arguments but also facilitate the examinations of Terry's proposed deponents and  hearing witnesses.  Moreover, as discussed below, much of the evidence that Terry seeks should have already been disclosed under Defendants' Local Civil Rule 33.2 discovery obligations.  Because this discovery is narrowly tailored—both to seek evidence relevant to the issue of administrative exhaustion and to minimize the burden to Defendants—discovery should be reopened.

     *a. Terry seeks evidence to corroborate his expected testimony that he repeatedly attempted to file grievances.*

As Terry explained at the end of the March hearing, he wants to testify on his own behalf. March 11, 2019 Tr. at 45:20.  He intends to describe his attempts to file grievances and to explain his many other efforts to hold accountable the corrections officers that assaulted him.   To corroborate this testimony, Terry will submit a multitude of letters he sent because of his concerns that the grievance process was unavailable to him.  He will also describe the retaliation he and other inmates suffered while in the SHU when they attempted to voice their concerns about the conduct of DOCCS employees.  To corroborate this testimony, Terry also plans to offer further evidence at the hearing, as described below.

     *i. Corroborating witness testimony.*

Acknowledging the Court's observation that "there is no witness testimony other than Plaintiff's to support" Terry's allegation that the grievance process was unavailable to him, Dkt. No. 101 at 21, Terry intends to call witnesses who will corroborate his expected testimony.  Despite Defendants' assertions that this testimony may be irrelevant and burdensome, Dkt. No. 128, these individuals were with Terry in 2013 when he submitted his grievances, heard Terry discuss his concerns that his grievances were not being filed, and in some instances experienced firsthand the same retaliation, destruction of grievances, and interception of mail that Terry alleges.  Their testimony will thus corroborate Terry's allegations that he tried to exhaust his administrative remedies.

First, Terry intends to call two inmates as witnesses upon resumption of the administrative exhaustion hearing:  Timothy Dixon and Robert Tumminia.  When Terry was placed in the SHU on January 13, 2013, Dixon was in an adjacent cell and reminded Terry to file a grievance as soon as possible.  Dixon is thus expected to corroborate Terry's testimony about his first attempt to file

a grievance, as well as Terry's testimony about other issues in the SHU that limited access to the grievance process.   Tumminia—who was placed in the SHU at the same time as Terry in connection with the same January 13 incident—is also expected to corroborate Terry's testimony. Like Terry, Tumminia is expected to testify that he was retaliated against in the SHU and that his attempts to submit grievances and send mail were thwarted by DOCCS staff.   Tumminia is also expected to testify about letters he wrote that were produced in discovery, which will corroborate both his and Terry's testimony.   Similarly, both inmates are expected to corroborate Terry's testimony that mail sent by inmates in the SHU was sometimes intercepted and never delivered. Terry may also offer evidence from friends and family who regularly received correspondence from him, but who stopped receiving such letters in January and February 2013.

Second, Terry intends to a call a former DOCCS counselor with whom he discussed the June 13, 2013 incident and his efforts to file grievances:  Shanelle Simpson.  Because Simpson is a former DOCCS employee, Terry seeks discovery of her last known contact information so that his counsel may secure her testimony.   *See* Stein Decl. Ex. 2 (Interrogatory #2).[4]   Simpson is expected to testify about Terry's efforts to follow the DOCCS grievance procedures, as well as the availability of the grievance procedures described by Defendants' witnesses.  As discussed below, Terry also seeks discovery of Simpson's records from her meetings with Terry.  *See* Stein Decl. Ex. 1 (Document Request #3).

---

[4] The Court previously instructed Defendants to provide this information, and Defendants' counsel represented that they had this information but would only provide it to the Court and not directly to Terry.  *See* Dkt. No. 135 (March 11, 2019 Tr. at 48:14); Dkt. No. 128 (letter from Defendants' counsel discussing Simpson contact information).  While Terry does not believe it is necessary to reopen discovery to get information that Defendants have already been asked to provide, this interrogatory is included in the interest of facilitating efficient case management.

Third, Terry intends to a call a current DOCCS employee with whom he discussed the January 13 incident and his efforts to file grievances:  Imam Samuel Encarnacion.  Terry had intended to call Encarnacion as a witness at the administrative exhaustion hearing.  March 11, 2019 Tr. at 54:23-55:2.  In the interest of minimizing the burden and expense to the Defendants, however, Terry would depose Encarnacion if discovery were reopened.  This deposition could narrow the scope of, or potentially obviate the need for, Encarnacion's live testimony upon resumption of the administrative exhaustion hearing.

ii.  *Documentation of Terry's contemporaneous efforts to seek justice.*

In addition to testimony from witnesses who saw and heard about Terry's efforts to file grievances, Terry will also rely on documentary evidence showing his other attempts to hold the corrections officers accountable for their conduct in the January 13 incident.  As Terry intends to explain, he was aware of and attempted to follow the grievance procedure, but he sought other paths of redress for the mistreatment he suffered at the hands of the Defendants when he suspected that his grievances were not being properly filed.  Because he was in the SHU, he had limited options to pursue grievances once they physically left his hands.

As explained above, Terry started writing to anyone that he thought might be able to do something.  According to records produced by Defendants, Terry wrote to:  the Superintendent (at least 4 times); the Inspector General (at least 3 times); the DOCCS Commissioner; the Sullivan County District Attorney; and Senator Kirsten Gillibrand.  Terry is also expected to testify that he wrote letters to Security Deputy D. Giglio, the Department of Justice, the New York State Trooper barracks at Liberty, and several lawyers. *See* Compl. ¶ 17, 49; Dkt. No. 100-1 (July 17, 2017 Deposition of Terry, Tr. at 33:15-34:5).

Terry also seeks the documents underlying a previously undisclosed investigation concerning his allegations, which will corroborate his efforts to seek redress within DOCCS.

12

Amidst Terry's various efforts to seek relief, the Sex Crimes Unit opened a case that apparently involved allegations against two of the named Defendants.  Stein Decl. ¶ 5.  Without access to the underlying documents about this investigation, Terry can only speculate about which of his many communications led to the opening of the investigation, including whether it was commenced in response to a grievance he attempted to file, one of his letters, discussions with his counselor, or some other mechanism.  Terry thus seeks all documents concerning this investigation.  *See* Stein Decl. Ex. 1 (Document Request #1).  The documentary evidence of what led to the opening of this investigation will provide additional evidence corroborating Terry's efforts to exhaust all options that were available to him.

Moreover, these documents should have *already been produced.*  Under Local Civil Rule 33.2, Defendants are required to "[p]roduce . . . in connection with the Incident: incident reports, intradepartmental memoranda (including memoranda sometimes referred to as "to/froms"), use of force reports, unusual incident reports, witness statements, injury to inmate reports, video or audio tapes, photographs, reports of infraction . . . ."  Local Civil Rule 33.2 (Document Request #4).[5] While Defendants produced other documents related to other DOCCS investigations of the January 13, 2013 incident, Terry received no documents whatsoever about the Sex Crimes Unit investigation despite its apparent connection to the same incident described in the complaint.  Stein Decl. ¶ 6(a).

Terry also seeks production of his counselling file, including the notes and chronologies maintained by his counselors, including but not limited to those maintained by Simpson and Encarnacion.  *See* Stein Decl. Ex. 1 (Document Request #3).  Terry will testify that he spoke to

---

[5] These requests can be found at https://nysd.uscourts.gov/sites/default/files/2018-06/lr-332-interrogatories.pdf, and a copy is attached to the Stein Declaration as Exhibit 4.

both Simpson and Encarnacion after the January 2013 incident, March 11, 2019 Tr. at 54:15-55:8, and he intends to call them both as witnesses. Not only will these records facilitate the examination of these witnesses, but they may also provide contemporaneous documentary evidence of Terry's attempts to exhaust his administrative remedies.

Similarly, Terry also seeks the full case file from the Office of Special Investigations Report, including email correspondence concerning that report. *See* Stein Decl. Ex. 1 (Document Request #2). Although Defendants have provided portions of this report on an attorneys'-eyes-only basis, this production appears to include only the portions of the report that the Magistrate Judge ordered Defendants' counsel to make available for Terry to review. It does not, however, include the video recording that Defendants' counsel arranged for Terry to view. July 27, 2017 Tr. at 3:8-14; Stein Decl. ¶ 6(c).

Now that Terry has counsel, moreover, the full report should be produced, even if on an attorneys'-eyes-only basis. Because the status conference transcripts do not disclose how Magistrate Judge Smith determined which portions of the report could be redacted, those redactions may not have been necessary if the full report could have been provided to Terry's counsel on an attorneys'-eyes-only basis. Indeed, as a pro se litigant, Terry had less ability to challenge Defendants' justifications for withholding the report on generalized objections of institutional safety. Other courts have overruled such objections in the absence of a specific, substantiated concerns, which likely do not exist here. *See, e.g.*, *see also Andrews v. Cruz,* 04-CV-0566, 2006 WL 1984650, at *3 (S.D.N.Y. July 14, 2006) ("Inspector General files concerning similar charges . . . and investigations are related and relevant to the allegations in this case, and may lead to the discovery of admissible evidence."). A complete production of the report—which would include video recordings reviewed by investigators during the course of their investigation,

witness statements, and correspondence within DOCCS about the circumstances that led to the opening of the investigation—may provide evidence of Terry's grievances and other attempts to pursue administrative remedies in connection with the January 13 incident.

### iii. *Videotapes of grievance process.*

If correction officers received and properly handled Terry's grievances, it would be reflected in the video recordings of the SHU. *See* March 11, 2019 Tr. at 27:6 ("the whole unit is camera'd"); *see also id.* at 43:5-7 ("it [the mailbox] is in a common area with a video on it"). Accordingly, Terry seeks recordings that would corroborate his testimony that he physically handed in grievances that were not properly processed. *See* Stein Decl. Ex. 1 (Document Requests #9-10). To minimize the burden on Defendants, Terry has narrowed the date ranges of this request to encompass three dates on which he will testify that he attempted to file grievances by handing them to corrections officers.[6] Terry also seeks evidence concerning whether representatives of the inmate grievance resolution committee visited the SHU as required by DOCCS Directive 4933, part 304.15(b), and as discussed by Defendants' witnesses. *See* March 11, 2019 Tr. at 16:4-8 ("A staff representative of the inmate grievance resolution committee will visit the SHU  a minimum of once per week or more often if necessary or requested to do by the supervisor in charge of the SHU to interview the inmate and investigate the grievance"). Based on the limited SHU sign-in logs produced to date, it appears that the only possible representative that may have made such rounds would be Gary Ter Bush.  *See* Stein Decl., Ex. 1 (Document Request #11); *see also id.* (Document Request #8) (requesting complete sign-in logs).  Like Terry's request for video

---

[6] As with several of Terry's other proposed discovery requests, these videotapes are also responsive to Local Civil Rule 33.2 Request #4:  Because Terry's complaint described his attempts to file grievances, videotapes of his attempts to file grievances are part of the "incident," which is defined as "the event or events described in the complaint."  Local Civil Rule 33.2 Requests (Definition #6).

recordings from days on which Terry will testify that he submitted grievances, this request is narrowly tailored to the days on which Gary Ter Bush or any other purported grievance committee representative signed into the SHU.

To the extent that no videotapes exist, moreover, Terry is entitled to an explanation of when and how they were destroyed. *See Anselmo v. Annucci*, 176 A.D.3d 1283, 1288 (N.Y. Sup. Ct., App. Div., 3d Dep't, 2019) (rejecting "the bald assertion that 'no videotape [is] available' without some further review and investigation of the underlying reasons for this absence"). Given the importance of videotapes, and the frequency of civil litigation arising from correctional facilities, other courts have noted the reasonable expectation that video footage ought to be preserved. *See id.* at 1287-88 ("A correctional facility should be charged with awareness that any potentially relevant video recordings of the area where use of force was necessary will be critically important evidence, and that any such recordings should therefore be preserved.").

To that end, Terry also seeks the DOCCS directives that explain how videotapes are maintained, including Directives 4942 (Fixed Video Monitoring System), 4943 (Hand-Held Video Recording for Security Purposes) and 6930 (Legal Process, Subpoenas, Preservation of Evidence). *See* Stein Decl., Ex. 1 (Document Request #12). Courts have granted disclosure of directives, even if designated as confidential. *See Roland v. Hill*, 17-CV-6524, 2019 WL 1128842, at *2 (W.D.N.Y. Mar. 12, 2019) (deciding that one directive was relevant to plaintiff's claims and that there was no security justification for keeping it confidential).

> b. *Terry seeks evidence to challenge Defendants' general evidence about the availability and accessibility of the grievance system.*

Defendants presented live testimony from two witnesses who explained the DOCCS grievance process purportedly available in the Sullivan SHU in January and February 2013, which Terry plans to challenge by presenting evidence that these policies were not in fact followed in the

16

manner that these witnesses claim.  By doing so, Terry will establish that the grievance procedure was not in fact available to him.  *See Williams v. Priatno*, 829 F.3d 118, 124, 2016 WL 3729383, (2d Cir. 2016) (grievance process is unavailable if "prison administrators thwart inmates from taking advantage of [it] . . . through machination, misrepresentation, or intimidation")

Among other evidence that Terry will offer, the SHU sign-in logs produced by Defendants apparently show no records of entries and exits into the SHU for 31 days, including no entries reflecting mail and package runs.  Since DOCCS Directive 4933 requires that all such entries and exits from the SHU be logged, and Directive 4422 requiring that mail be collected daily, the absence of SHU Sign-in Logs from these days suggest that the system described by the Directives was not in fact available.  To address this discrepancy, Terry requests all SHU sign-in logs.  *See* Stein Decl. Ex. 1 (Document Request #8) (seeking complete record of sign-in logs).[7]

*i. Evidence that inmates lacked access to grievance procedure in the SHU*

Defendants' prehearing brief expresses incredulity that Terry's grievances would be mishandled, Dkt. No. 109 at 1, 6-7, but numerous inmates appear to have confronted a similar lack of access to the grievance procedure.  In addition to the expected testimony from Tumminia and Dixon discussed above, Terry will offer the grievance logs already produced by Defendants, which will show at least *eight* grievances that inmates lacked access to the grievance program, as well as another *eleven* grievances about problems sending or receiving mail.  Defendants likewise suggest

---

[7] As with other requests, these records should have been produced in response to the Local Civil Rule 33.2 Requests, insofar as Request #2 asks Defendants to "[i]dentify all Department and Facility employees who were present at, witnessed, or investigated the Incident or who at or about the time of the Incident were assigned to work in the area where the Incident occurred (if such area is identifiable and discrete)," and the complaint alleged misconduct by DOCCS employees in the SHU during this time.

skepticism that correction officers would retaliate against inmates for filing grievances, yet those same logs will show *six* instances of grievances regarding retaliation.

Terry thus seeks discovery of "[r]ecords of investigations, complaints and charges for conduct similar to that alleged" by Terry, which are "related and relevant to the allegations in this case, and may lead to the discovery of admissible evidence." *See Andrews v. Cruz,* 04-CV-0566, 2006 WL 1984650, at *3 (S.D.N.Y. July 14, 2006); *see also Roland v. Hill*, 17-CV-6524, 2019 WL 1128842, at *2 (W.D.N.Y. Mar. 12, 2019) ("Grievances or complaints against defendants for conduct similar to that at issue is plainly relevant.").

In order to narrow Defendants' search and minimize any burden, Terry requests documents related to only two categories of grievances.  First, the documents concerning the twenty-five grievances discussed above—which are identified by grievance number and description in the document request—including their disposition and any files reflecting any resulting investigation. *See* Stein Decl. Ex. 1 (Document Requests #4-6).  At a minimum, these grievances should be reviewed to determine whether any involve Michael Makowski, Gary Ter Bush, either of Defendants' witnesses, or the other two officers to whom Terry recalls handing grievances, whose identities are sought by interrogatory.  *See* Stein Decl. Ex. 2 (Interrogatory #1).  Second, Terry seeks documents concerning grievances against the DOCCS employees who are most likely to have mishandled Terry's grievances, who are identified by name or description. *See* Stein Decl.Ex. 1 (Document Request #7).[8]

---

[8] Based only on public research, the supervisor of the grievance process at Sullivan in 2013, Gary Ter Bush, has been accused of obstructing access to grievance policies at least *three* times, although none have led to a judicial finding that he destroyed grievances.  *See Colon v. N.Y. State Dep't of Corrs. & Cmty. Supervision,* 15-CV-7432, 2019 WL 5294935, at *8 (S.D.N.Y. Oct. 17, 2019) (discussing allegations that TerBush "would regularly 'trash' grievances made against medical or correctional staff"); *see also Lawrence v. Goord*, 238 F.3d 182, 184 (2d Cir. 2001) (reciting allegations that "Gary Ter Bush, Grievance Coordinator, is named as a Defendant in the

Terry also seeks these documents to facilitate a deposition of one other individual, who is familiar with the Sullivan Correctional Facility grievance procedure from this time period.

Further to this point, Terry also intends to offer evidence showing similar lack of access to grievance procedures in other DOCCS facilities between 2012 and 2015, reflecting systemic issues with the grievance process in the SHU.  Given that DOCCS facilities are supposed to follow the same directives, this evidence will show persistent and pervasive issues with the prisoner grievance process, including a systemic failure to provide inmates with an adequate means to file grievances free from interference or retaliation by DOCCS staff, a lack of trust in the formal procedure among inmates, and failures to track inmate grievances in internal DOCCS systems.

### ii.   Examination by counsel of Defendants' two witnesses

As a *pro se* litigant, Terry lacked the benefit of counsel during the March 11, 2019 hearing at which Defendants' witnesses testified.  As a result, there are several lines of questioning that may have adduced testimony probative of Terry's position, but that he did not pursue.  Particularly since the administrative exhaustion hearing did not close—as Terry himself did not testify and he planned to call other witnesses—he would like his counsel to conduct a further examination.  In

---

action for conspiring to author a false misbehavior report in 1997 in retaliation for plaintiff's complaints about staff misconduct"), *vacated and remanded* 122 S. Ct. 1200 (2002); *see also Hernandez v. Goord*, 02-CV-1704, 2006 WL 2109432, at *3 (S.D.N.Y. July 28, 2006) (granting summary judgment to Defendants, including Gary Ter Bush, where he allegedly "failed to hold timely hearings and process grievances, failed to investigate properly and interview people against whom Plaintiff had filed grievances, failed to file Plaintiff's grievance appeals, failed to provide Plaintiff with decisions, and failed to make full records of Plaintiff's complaints . . .Plaintiff stated during a deposition that Defendants Ter Bush and Miller . . . impeded Plaintiff's ability to exhaust his administrative remedies and file a lawsuit").

the interest of minimizing the burden and expense to the Defendants, Terry seeks to depose these individuals at a mutually convenient time and place in connection with reopening discovery.[9]

Specifically, Terry seeks the opportunity for his limited scope *pro bono* counsel to cross-examine Paul Mace, DOCCS Captain currently employed at Sullivan, and Joseph Franke, DOCCS Corrections Officer currently employed at Sullivan, both of whom testified at the March 11, 2019 hearing.  This examination would likely cover how the witnesses and other DOCCS employees informed inmates about the grievance program, how frequently the "morning go-round" was conducted, and how the SHU sign-in process works.  The witnesses also likely have additional details about what happens immediately after an inmate hands a grievance to a corrections officer in the SHU, which will be relevant to establishing the credibility of Terry's testimony and the testimony of the other witnesses he plans to call.  These witnesses can also provide additional detail about video recordings of the SHU and the mail sorting area, including when and how these videotapes are stored and reviewed.  These witnesses can also provide additional detail about the mechanism of reporting grievances to an IGRC representative or counselor, as the function of such reports in the grievance process were not explained in their testimony.

## IV.  Trial is not imminent.

The Court has not yet set a trial date, nor even a date for the remainder of the administrative exhaustion hearing, and thus no trial is imminent.  Moreover, Terry proposes reopening discovery for only 90 days, which will ensure that the progress of this case is not unduly delayed.  This factor thus does not weigh against reopening discovery.

---

[9] Since Terry never presented his case at the March 11, 2019 hearing, the exhaustion hearing was never concluded and discovery need not be reopened for him to examine these witnesses.

**V.    Defendants will suffer no prejudice apart from the ordinary burdens of discovery against a represented litigant.**

Given that much of the discovery sought should have been provided in response to the Local Civil Rule 33.2 discovery requests (as discussed *supra* Point IV), and particularly given that no trial date has been set, Defendants will not be prejudiced by reopening discovery on the narrow and expedited basis that Terry seeks.  While certain costs and inconveniences are inevitable to civil discovery, Terry has tried to minimize these by meeting and conferring through counsel on the scope of the requested discovery.  As importantly, Defendants would likely have borne these burdens before the close of discovery had Terry then been represented by counsel.  There is no unique prejudice to Defendants' compliance now that limited scope *pro bono* counsel has appeared, particularly since trial is not imminent.  Nor will Defendants suffer any prejudice from bringing to the surface new facts about the administrative exhaustion issue, given that much of the evidence that Terry seeks—from DOCCS files and witnesses controlled by DOCCS—has long been available to the Defendants and their counsel.

**VI.   The relevance of discovery, the minimal prejudice to Defendants, and Terry's previous diligence outweigh Defendants' opposition to modifying the schedule for narrowly tailored discovery on a fixed schedule.**

Despite the narrow scope and timing of the discovery sought by Terry, Defendants will not agree to reopen discovery and thus will oppose this motion.  However, discovery can be reopened over a party's objections and assertions of prejudice where a litigant shows previous diligence, the relevance of the evidence sought, and a speedy timeline for completion of the reopened discovery. *See Shapard v. Attea*, 08-CV-6146, 2015 WL 866892, at *2 (W.D.N.Y. Mar. 2, 2015).  As discussed above, Terry has been diligent in pursuing discovery, and the evidence is relevant to administrative exhaustion.  Given that the proposed order provides a speedy timeline to complete the reopened discovery, Defendants' objection should be overruled.

## CONCLUSION

For the foregoing reasons, Terry's motion to reopen discovery should be granted.

Dated: December 20, 2019

**KOBRE & KIM LLP**

By: /s/ Darryl G. Stein

Lindsey Weiss Harris
Darryl G. Stein
800 Third Avenue
New York, New York 10022
Tel.: (212) 488-1243
Darryl.Stein@kobrekim.com